[Crim. No. 1213. Third Appellate District.—July 13, 1932.]

THE PEOPLE, Respondent, v. ZACK MOODY, Appellant.

J. C. Webster for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant was tried and convicted upon an information charging that on or about the seventh day of February, 1932, in the county of Tuolumne, state of California, he assaulted one Mrs. H. E. Rolfe with a deadly weapon, with intent to commit murder. From the judgment entered upon the verdict of guilty based upon the charge just referred to, the defendant appeals.

█ .Only one question is presented for our consideration by the appellant's brief, to wit: Whether the jury was justified in finding that the assault had coupled with it the intent to commit murder. The appellant admits that the court correctly instructed the jury.

The record shows that the defendant and Mrs. H. E. Rolfe both attended a ball which was given at the Harvard Hotel in the town of Tuolumne, on the evening of February 6, 1932. It further shows that prior to the date of the alleged assault the defendant and Mrs. Rolfe had been maintaining toward each other the relationship of husband and wife, without ever having in fact been married. While not expressly called to our attention in the record the inference seems clear that the defendant and Mrs. Rolfe did not attend the ball together, but went there individually. During the evening of the ball the defendant asked Mrs. Rolfe to dance with him; Mrs. Rolfe declined to do so, stating that she was not dancing that evening. From this time on the record shows that the defendant was in a surly mood, made many profane and vulgar remarks to her, and also about friends who apparently were in her company. Some time after 12 o'clock Mrs. Rolfe, accompanied by two of her friends, a husband and wife, went to her residence, the friends who accompanied Mrs. Rolfe remaining but a few minutes. After their departure Mrs. Rolfe made some preparations for retiring for the night, and at the time of the assault hereinafter mentioned was clad in her night clothes covered by a kimono. . Some time after 12 o'clock and after Mrs. Rolfe had gone to her own home, the defendant repaired to the residence of Mrs. Rolfe and sought entrance. Whether on account of the ugly disposition which the defendant exhibited during the evening, or for some reason not completely disclosed by the record, Mrs. Rolfe did not wish the defendant to enter her apartments that night, and seeking to drive him away, fired a pistol

shot into the ceiling of the front room of her residence. It appears that there was a light left on the front porch which was explained as indicating that some member of Mrs. Rolfe's household was absent, the testimony showing that a daughter had gone to Sonora to attend the dance. The defendant, entering upon a front porch, sought entrance through a door which was partly frame and partly glass, and rapped thereon, demanding that it be opened. Mrs. Rolfe declined to do so, and fired the shot to which we have just referred. Immediately following this incident the defendant broke the glass part of the door and climbed through the opening thus made into the room where Mrs. Rolfe was standing. Then followed the assault of the defendant upon the person of Mrs. Rolfe. It appears that the defendant had a knife in one of his hands and began stabbing the person of Mrs. Rolfe, stating at the same time that he would cut her head off and roll it through the streets as a football.

The record shows that defendant stabbed Mrs. Rolfe in several places, once in the neck and once just over the left shoulder blade. This cut was about four inches long. Neither one of these cuts reached a vital spot. The defendant likewise inflicted several minor wounds on the person of Mrs. Rolfe.

It appears that Mrs. Rolfe, when the assault was made, grappled with the defendant and both of them fell to the floor. The cut in the back was about one inch deep. The lacerations, as testified to by one of the physicians, were in the neighborhood of the body where, had the knife blade pierced with sufficient depth, fatal results might have followed.

The testimony in the record shows that a considerable scuffle ensued between the defendant and Mrs. Rolfe, and that she finally escaped after receiving the wounds we have indicated.

The defendant's story of the affair was to the effect that two men were concealed in Mrs. Rolfe's room when he entered, and that they assaulted him. His story was of such a character, however, that no jury could accept it as being a correct version of the affair.

Section 21 of the Penal Code reads in part: "The intent or intention is manifested by the circumstances connected

with the offense and the sound mind and discretion of the accused." Here, we have an instance of the declaration of the intent of the accused, and also of the acts constituting the assault which the jury had a right to consider in determining whether the defendant did or did not intend to commit murder. The surly disposition displayed by the defendant prior to the actual assault constituted a circumstance proper for the consideration of the jury. The fact that the defendant did not commit murder was due only to the shortness of the knife blade. The jury had a right also to consider the disposition manifested by the defendant prior to the actual assault in determining the question of deliberation and premeditation which is necessary to raise an assault with a deadly weapon to the crime of attempt to commit murder. While these mental processes may follow each other in rapid succession, the circumstances disclosed by the testimony in this case indicate that a feeling of hostility existed for at least a few hours, and as stated by counsel for the People, the fact that fate intervened and prevented the defendant from accomplishing his full purpose, does not tend to rebut the intent to commit murder and raise the offense from an assault with a deadly weapon to that of the higher degree of crime of which he was convicted.

No other question being tendered for our consideration, it follows that the judgment of the trial court should be affirmed, and it is so ordered.

Preston, P. J., concurred.